UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KIMELA L. G., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-cv-01426-TAB-JMS |
| ) | |
| ANDREW M. SAUL Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

## I. Introduction

The Seventh Circuit has repeatedly held that Administrative Law Judges must account for claimants' limitations in concentration, persistence, and pace ("CPP") both in their residual functional capacity assessments and in their hypotheticals to the vocational expert. The Seventh Circuit has likewise repeatedly held that hypotheticals that merely limit claimants to simple, routine, and repetitive tasks without fully informing the VE of claimants' CPP limitations are insufficient. In this case, it seems the ALJ attempted to sidestep the Seventh Circuit's clear directive. The ALJ found that Plaintiff had moderate limitations in CPP with respect to "all situations [Plaintiff] might encounter," but within the parameters of simple, routine, and repetitive tasks, "Plaintiff [was] able to sustain the attention, concentration, and persistence needed to perform on a regular and continuing basis." [Filing No. 11-2, at ECF p. 24.] In other words, the ALJ did not include Plaintiff's CPP limitations in her RFC because the limitations supposedly did not affect Plaintiff's ability to do simple, routine, and repetitive tasks at work. With this carveout, the ALJ's hypotheticals merely limited Plaintiff to simple, routine tasks and simple work-related decisions. However, the Court is not convinced that this approach complies

with Seventh Circuit precedent. Further, given that the Seventh Circuit has given ALJ's a safe harbor—include "moderate limitations in concentration, persistence, and pace" in a hypothetical—this attempt to sidestep the Seventh Circuit's case law is unwarranted. Therefore, the Court grants Plaintiff's request for remand. [Filing No. 15.]

## II. Background

Plaintiff applied for disability insurance benefits in July 2014, claiming disability beginning in March 2013. Her claim was denied initially and upon review. Plaintiff then had a hearing before an Administrative Law Judge, who found Plaintiff's impairments did not prevent her from working. The Appeals Council denied Plaintiff's request for review, and Plaintiff appealed to this Court.

The ALJ followed the Social Security Administration's five-step sequential evaluation process, 20 C.F.R. § 404.1520(a), and determined Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity in the relevant period. Plaintiff worked part-time during this period, and the ALJ considered this when analyzing Plaintiff's RFC, but the ALJ found the earnings did not constitute substantial gainful activity that would disqualify Plaintiff. At step two, the ALJ found Plaintiff had three severe impairments: below-the-knee amputation of the right leg, back pain with radiation down the leg, and depression. The ALJ further found Plaintiff's remote history of cervical cancer was a non-severe impairment. At step three, the ALJ found that Plaintiff did not have an impairment that met, or a combination of impairments that medically equaled, any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, the ALJ looked to listings 1.05B (amputation of lower extremity), 1.04 (disorders of the spine), and 12.04 (depressive, bipolar, and related disorders).

Regarding listing 1.05B, the ALJ considered whether stump complications made Plaintiff medically unable to use a prosthetic device to ambulate effectively.

Before moving on to step four, the ALJ determined Plaintiff's RFC. Specifically, the ALJ found Plaintiff had the RFC to perform sedentary work, except:

> [S]he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; never climb ladders, ropes or scaffolds; never be required to work around unprotected heights, moving mechanical parts, or be required to operate a motor vehicle; and never be required to work around slippery, uneven surfaces. [Plaintiff] is further limited to simple, routine tasks and simple work-related decisions.

[Filing No. 11-2, at ECF pp. 18–19.] Using this determination, along with Plaintiff's age, education, and work experience, as well as testimony from the VE, the ALJ found at step four that Plaintiff was unable to perform any of her past relevant work. At step five, the ALJ again considered that information but concluded that there were other jobs in significant numbers that Plaintiff could perform. Thus, the ALJ found Plaintiff was not disabled. Plaintiff argues that this finding is not supported by substantial evidence and must be remanded for reconsideration.

### III. Discussion

Plaintiff presents three arguments that the ALJ's decision is not supported by substantial evidence, all of which concern whether the ALJ accounted for her own findings. *See L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151 (7th Cir. 2019) (ALJs' decisions must be supported by substantial evidence). The Court first addresses Plaintiff's position that the ALJ failed to account for the ALJ's step three finding that Plaintiff had moderate limitations in CPP. Plaintiff contends the ALJ failed to account for Plaintiff's CPP limitations in both the RFC finding and the ALJ's hypotheticals to the VE. Defendant responds that the ALJ in fact accounted for Plaintiff's CPP limitations in her express finding that, while Plaintiff generally has CPP limitations in her life as a whole, Plaintiff was not limited when she was in an appropriate work

3

environment. As discussed below, the ALJ's decision runs afoul of Seventh Circuit precedent and requires remand.

Plaintiff's two remaining arguments concern, at least in part, whether the ALJ ignored her own findings concerning other limitations. According to Plaintiff, the ALJ's step three consideration of listing 1.05B was perfunctory and failed to create a logical bridge from the evidence to the ALJ's conclusion. Plaintiff next argues the ALJ failed to include in Plaintiff's RFC the ALJ's finding that Plaintiff needed to remove her prosthesis several times a day for 30 to 60 minutes. However, either in part or in whole, both arguments rely on the faulty assumption that the ALJ found Plaintiff's testimony was credible and adopted it. The remaining support for Plaintiff's positions is unpersuasive.

### a. Concentration, Persistence, and Pace

Plaintiff argues that the ALJ failed to account for her own step three finding that Plaintiff suffered from a moderate CPP limitation. Plaintiff contends the ALJ failed to include this limitation in her hypotheticals to the VE and failed to include an appropriate limitation in Plaintiff's RFC. Defendant responds that the ALJ's hypotheticals to the VE sufficiently encapsulated Plaintiff's RFC because the ALJ expressly found that, though Plaintiff had CPP limitations in general, Plaintiff's CPP limitations did not affect her when she was in an appropriate work environment with appropriate tasks. The problem is the ALJ's description of an appropriate environment and tasks matches limitations that the Seventh Circuit has found insufficient to fully account for moderate CPP limitations.

ALJs' RFC determinations and the hypotheticals they pose to VEs must incorporate all of a claimant's limitations. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). The Seven Circuit has reiterated "[a]gain and again . . . that when an ALJ finds there are documented limitations of

[CPP], the hypothetical question[s] presented to the VE must account for these limitations."
*Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) (collecting cases).  The Seventh Circuit likewise has repeatedly held that "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems" for individuals with CPP limitations." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (collecting cases).  The Seventh Circuit has repeatedly said that "confining the claimant to simple, routine, tasks and limited interactions with others" does not "adequately capture[ ] . . . limitations in [CPP]." *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) (collecting cases) (quoting *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014)).  Though the Seven Circuit has "not insisted . . . on a per se requirement that this specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases," the Court will only uphold an ALJ's hypothetical omitting the terms "when it [is] manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner*, 627 F.3d at 619.

Despite the ALJ's finding that Plaintiff had moderate limitations in CPP, the ALJ's hypotheticals merely limited Plaintiff to "simple routine tasks and simple work-related decisions." [Filing No. 11-2, at ECF p. 56.] Rather than simply include "moderate limitations in concentration, persistence, and pace" in her hypotheticals, it appears the ALJ tried to work around these well-established requirements by qualifying her CPP finding in two ways.  First, the ALJ specified in her step three analysis that her "paragraph B" finding of a moderate limitation in CPP was not an RFC finding, and that the conclusion was only applicable to steps two and three.  [*Id.* at ECF 18.]  Second, the ALJ's RFC discussion on this topic tries to circumscribe when Plaintiff experiences CPP limitations:

5

> Although [Plaintiff] carries the diagnosis of depression, I find that she has the mental capacity to understand, remember and follow simple, routine tasks and simple work-related decisions. Within these parameters, and in the context of performing simple repetitive tasks, she is able to sustain the attention and concentration necessary to carry out work-like tasks with reasonable pace and persistence. While [the ALJ] noted a "moderate" limitation in the "paragraph B" criteria above for [CPP], this is based upon the record as a whole and all situations [Plaintiff] might encounter. Within these parameters, [Plaintiff] is able to sustain the attention, concentration and persistence needed to perform on a regular and continuing basis.

[*Id.* at ECF p. 24.]

Defendant argues that these caveats in the ALJ's decision make the ALJ's hypotheticals and analysis sufficient. However, Defendant's argument is unpersuasive. Defendant's position is that confining a claimant to simple, routine tasks and simple work-related decisions in fact does account for limitations in CPP when the confinement is included in the RFC, rather than merely in the hypotheticals to the VE. Defendant contends that because the ALJ framed the RFC this way, Plaintiff has the burden to point to medical evidence showing that she cannot concentrate, persist, and maintain pace when she is limited to simple, routine tasks and simple work-related decisions. However, the only authority Defendant cites to support his position does not involve a CPP issue. [Filing No. 19, at ECF p. 15 (citing *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010)).] The Seventh Circuit has repeatedly held that confining a claimant to simple, routine tasks and simple work-related decisions is inherently insufficient to account for moderate CCP limitations. The Court is not persuaded that the ALJ's approach complies with the foregoing Seventh Circuit opinions on this issue. Rather, the ALJ's and Defendant's efforts seem to be an effort to avoid compliance.

On remand, the ALJ must include "moderate limitations in concentration, persistence, and pace" or a detailed description of Plaintiff's precise CPP limitations in a hypothetical to the VE. See *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).

### b. Remaining Arguments

Plaintiff's remaining arguments each rely, at least in part, on the same faulty assumption: that the ALJ's recitation of Plaintiff's allegations in her testimony equate to findings by the ALJ. The ALJ relayed the allegations Plaintiff made during her testimony, setting them out in three paragraphs. [Filing No. 11-2, at ECF pp. 19–20.] Though not every sentence began with "the claimant alleges" or "she said," each paragraph began with a variant of "the claimant testified," and nothing in the paragraphs indicated that the ALJ switched from discussing the claimant's testimony to laying out the ALJ's findings. Further, after those three paragraphs, the ALJ began the next paragraph with "Turning to the objective medical evidence," thereby signaling the end of the ALJ's discussion of Plaintiff's testimonial evidence and the ALJ's transition to a new category of evidence. [*Id.* at ECF p. 20.] This context makes it clear that the ALJ was simply relaying evidence—not making findings.

In both her remaining arguments, Plaintiff relies on Plaintiff's testimony as relayed by the ALJ as if it were accepted fact. However, the ALJ concluded that Plaintiff's allegations regarding her amputation were not credible. [*Id.* at ECF p. 23.] Plaintiff does not expressly challenge the ALJ's credibility analysis or conclusion, and certainly does not argue the finding was "patently wrong." *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (courts "may disturb the ALJ's credibility finding only if it is 'patently wrong.'"). Plaintiff argues the ALJ erred by failing to include Plaintiff's alleged need to remove her prosthesis several times a day in Plaintiff's RFC. However, because the ALJ discredited Plaintiff's testimony, the ALJ rejected this claim and was correct in leaving it out of Plaintiff's RFC.

Similarly, most of the evidentiary support Plaintiff relies on in her listing 1.05B argument can be dismissed as discredited, severely weakening the argument's foundations. However, the

7

remaining support merits further discussion, even though Plaintiff's argument is ultimately unpersuasive. Plaintiff's first argument concerns the ALJ's step three analysis. At step three, ALJs look to the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, and analyze whether the claimant meets or medically equals any listing's criteria. In doing so, ALJs "must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Kastner v. Astrue*, 697 F.3d 642, 647 (7th Cir. 2012) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). In this case, the ALJ looked to listings 1.05B, 1.04, and 12.04. Plaintiff limits her arguments to the ALJ's discussion of listing 1.05B.

Listing 1.05B concerns amputation of "[o]ne or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 1.00B2b, which have lasted or are expected to last for at least 12 months." 20 C.F.R. pt. 404, subpt. P, app'x 1. The definition of "ambulate effectively" has two parts:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.* (1.00(B)(2)(b)).  In sum, this listing requires that, for at least 12 months, the claimant had a very serious interference with her ability to walk at a reasonable pace to independently initiate, sustain, or complete activities of daily living without using hand-held assistive devices.

Plaintiff argues that the ALJ's analysis of this listing is perfunctory, unsupported, and conflicts with and ignores evidence without explanation.[1]  As Plaintiff points out, the ALJ's analysis is a single, though rather long, sentence:

> I have considered [Plaintiff's] below the knee amputation using the criteria of Listing 1.05B, which requires amputation [of] one or both lower extremities at or above the tarsal region; however, there is no evidence of stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, and which has lasted or is expected to last for at least 12 months, as defined in 1.00B2b."

[Filing No. 11-2, at ECF p. 16.]

While this discussion is short, a look at the evidence Plaintiff claims the ALJ omitted from the analysis shows the discussion was not so cursory as to require remand.  First, Plaintiff relies heavily on her own testimony, which as noted above, the ALJ discredited.  Second, the medical evidence Plaintiff relies on does not approach showing a twelve-month period where Plaintiff had a very serious interference with her ability to walk.  Plaintiff cites a remote (2011) surgery to "revise the stump . . . when the bone began to protrude through her skin," a "small stage one pressure sore" in October 2014, a five mm lesion in October 2014, a December 2015 appointment to reevaluate the fit of her prosthesis in which Plaintiff had a slow, limping gait, and an August 2016 appointment in which Plaintiff complained that her prosthesis did not fit properly and that the pain was worse when putting the prosthesis on.  [Filing No. 15, at ECF p.

---

[1] Plaintiff also argues that the ALJ entirely failed to analyze whether Plaintiff's impairments together medically equal listing 1.05B.  However, Plaintiff's contention is incorrect.  The ALJ began her discussion by noting that "[t]he severity of [Plaintiff's] physical impairments, considered singly *and in combination*, does not meet or medically equal the criteria of any impairment."  [Filing No. 11-2, at ECF p. 16 (emphasis added).]

12 (citing Filing No. 11-8, at pp. 64, 77, 86; Filing No. 11-9, at ECF pp. 3, 43).] Though spanning more than 12 months, these records show mere isolated incidents regarding Plaintiff's prosthesis, and rather than demonstrate Plaintiff was unable to "ambulate effectively," some of the records indicate the opposite. [Filing No. 11-8, at ECF p. 64 (showing Plaintiff did not use any assistive devices to walk and was able to walk one block without assistance, to climb six stairs, to perform household chores with slight difficulty when completed in short intervals, and to work part time at Village Pantry); Filing No. 11-8, at ECF p. 86 (finding Plaintiff was "quite mobile").] While the ALJ's one-sentence discussion may seem perfunctory at first blush, Plaintiff fails to refute the ALJ's conclusion that there was "no evidence" that Plaintiff met or medically equaled the criteria in listing 1.05B.[2] Thus, the short discussion does not require remand.

Plaintiff next argues the ALJ's analysis of listing 1.05B requires remand because the ALJ failed to consult a fully informed medical expert regarding medical equivalence. Plaintiff points out that the state agency physicians who evaluated medical equivalence for listing 1.05B completed their evaluation and opinions before an April 2015 record that indicated that Plaintiff "had an asymmetric gait . . . with prosthesis in place," Plaintiff's hips were asymmetrical with her right hip higher than her left, and that Plaintiff claimed her "prosthesis did not fit properly and that the pain was worse when putting the prosthesis on." [Filing No. 15, at ECF p. 14 (citing Filing No. 11-8, at ECF p. 86).] Plaintiff contends that, in light of this additional evidence, the

---

[2] Notably, the ALJ discussed each of the records Plaintiff relies on in her RFC analysis, showing the ALJ was aware of this potential support for Plaintiff's claim. *Cf. Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (The Court does not discount a step three analysis "simply because it appears elsewhere in the decision.").

ALJ was required under Social Security Ruling 96-6p to obtain an updated medical opinion on medical equivalence.

However, Plaintiff is mistaken. While SSR 96-6p begins by saying the ALJ "*must* obtain an updated medical opinion," this seeming command is immediately softened because the trigger for requiring an additional opinion is "when additional medical evidence is received that *in the opinion of the administrative law judge* or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment" does not medically equal a listing. 1996 WL 374180, at *3-4 (emphasis added). The Seventh Circuit, as well as district courts within the circuit, hold the ALJ's opinion regarding the necessity of an additional medical opinion governs, and the Court only reviews whether the ALJ abused her discretion. *Wilcox v. Astrue*, 492 Fed. Appx. 674, 678 (7th Cir. 2012); *Hungerford v. Berryhill*, No. 1:17-cv-02407-TWP-TAB, 2018 WL 3653199, at *5 (S.D. Ind. July 6, 2018), report and recommendation adopted, 2018 WL 3651329 (S.D. Ind. Aug. 1, 2018); *Magee v. Colvin*, No. 1:13-cv-01723-TWP 2015 WL 1417619, at *5 (S.D. Ind. Mar. 26, 2015).

Plaintiff fails to show the ALJ abused her discretion by not obtaining an updated medical opinion after Plaintiff added the April 2015 record to the evidence before the ALJ. While the April 2015 record shows Plaintiff was having additional struggles, and may have required adjustments to her prosthesis or even a new prosthesis, the physician also opined that Plaintiff was "quite mobile." [Filing No. 11-8, at ECF p. 86.] The ALJ pointed this out in her RFC discussion. [Filing No. 11-2, at ECF p. 22.] Given the lack of support in the record suggesting that Plaintiff could not "ambulate effectively" coupled with the fact that this particular record is at best a mixed bag, it was well within the ALJ's discretion to not seek an updated opinion.

11

## IV. Conclusion

As explained above, the ALJ failed to properly account for Plaintiff's limitations in CPP. Therefore, the Court grants Plaintiff's request for remand [Filing No. 15] pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration of Plaintiff's limitations.

Date: 7/12/2019

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record by email.